Jonathan Hangartner, Cal. Bar No. 196268
X-PATENTS APC
5670 La Jolla Blvd.
La Jolla, California 92037
Telephone: (858) 454-4313
jon@x-patents.com

JONES WALDO HOLBROOK & McDONOUGH PC
Nathan D. Thomas, Cal. Bar No. 234931
Elizabeth M. Butler, Cal. Bar No. 326901
170 South Main Street, Suite 1500
Salt Lake City, Utah  84101
Telephone:  (801) 521-3200
Facsimile:  (801) 328-0537
nthomas@joneswaldo.com
ebutler@joneswaldo.com

*Attorneys for Plaintiff Kurin, Inc.*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KURIN, INC., <br><br> Plaintiff, <br><br> v. <br><br> MAGNOLIA MEDICAL TECHNOLOGIES, INC., <br><br> Defendant. | Case No. **'20CV1011 BEN JLB** <br><br> **COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Kurin, Inc. ("Kurin") in support of its Complaint against Defendant Magnolia Medical Technologies, Inc. ("Magnolia" or "Defendant") alleges as follows:

**PARTIES**

1. Kurin is a Delaware corporation with its principal place of business in San Diego, California.

2. Magnolia is a Washington corporation with its principal place of business in Seattle, Washington.

1637106.2

## JURISDICTION

3. This is a civil action for false advertising and unfair competition under the federal Lanham Act, 15 U.S.C. § 1125(a), *et seq.* and California Bus. & Prof. Code § 17200, *et seq.*

4. This Court has jurisdiction over the subject matter of the Complaint pursuant to 28 U.S.C. §§ 1331 & 1338.

5. This Court has personal jurisdiction over Magnolia because, on information and belief, Magnolia is engaged in substantial and regular business in the State of California, including but not limited to having an office in San Mateo, California, and selling, distributing, and attempting to market its products in the State of California and, specifically, in the Southern District of California.

6. Venue is proper under 28 U.S.C. §§ 1391(b) and (c).

## GENERAL BACKGROUND

7. Kurin is a privately held, certified minority owned business dedicated to engineering innovative, cost-effective healthcare technologies. Kurin has focused its experience in medical device engineering, marketing, sales and service, to tackle the persistent and costly problem of false positive blood cultures.

8. False positive blood cultures can negatively impact patient health due to unnecessary administration of antibiotics, increased risk of allergic reactions and drug interactions, and extended hospital stays and the associated risk of hospital acquired illnesses.

9. The cost of a single false-positive blood culture has been estimated at $4,500 to $10,000. Each year, U.S. hospitals waste several billion dollars on false-positive blood cultures.

10. In an effort to improve patient care and reduce costs, Kurin developed the Kurin Lock™ ("Kurin Lock™").

11. The Kurin Lock™ is incorporated into traditional blood culture collection sets.

12. The Kurin Lock™ sidelines contaminants associated with the initial flow of blood drawn from a patient, then allows subsequent blood to flow directly into the blood culture collection bottle.

13. Magnolia is a medical device company that developed, manufactures, and sells a blood culture specimen diversion device it calls Steripath.

14. Steripath is incorporated into traditional blood culture collection sets.

15. Magnolia asserts that Steripath "improves sepsis testing accuracy to prevent patient harm and significantly improve patient safety while enabling important hospital antibiotic stewardship efforts. It does so by dramatically reducing false positive blood cultures to a degree previously thought to be unachievable, therefore unnecessary aggressive treatment associated with false positives is eliminated."

16. Magnolia first offered Steripath for commercial distribution in 2014.

17. By no later than early 2018, Magnolia began commercial distribution of a modified version of its Steripath device it refers to as "Gen2."  Herein, the original Steripath device and Gen2 are collectively referred to as "Steripath" unless specifically differentiated.

18. Magnolia and Kurin market their devices to hospitals and hospital groups seeking to reduce the number of false-positive blood cultures.

19. Magnolia and Kurin are direct competitors.

## FDA 510(k) CLEARANCE PROCESS

20. Medical devices are subject to regulation by the Food and Drug Administration ("FDA") pursuant to the Food, Drug, and Cosmetics Act ("FDC Act") and associated regulations.

21. Any person or entity that wants to market in the U.S. a Class I, Class II, or Class III medical device intended for human use for which a Premarket Approval Application ("PMA") is not required, must submit a 510(k) to the FDA unless the device is classified as exempt from the 510(k) under the FDC Act.

22. A 510(k) is required when introducing a non-exempt device into commercial distribution (marketing) for the first time.

23. A device subject to 510(k) clearance that is marketed before receiving such clearance is not legally marketed.

3

Complaint

1637106.2

24. Certain Class I and Class II devices are exempt from the 510(k) process. These exempt devices are specifically listed by the FDA.

25. A 510(k) is a premarket submission made to the FDA to demonstrate that the device to be marketed is substantially equivalent to a legally marketed device that is not subject to PMA.

26. Before marketing a device, the submitter must receive a letter from FDA which finds the device to be substantially equivalent and states that the device may be marketed in the U.S.)

27. This FDA order – in the form of a letter – "clears" the device for commercial distribution.

28. FDA employs a Refuse to Accept Policy ("RTA Policy") with respect to 510(k) submissions.

29. The FDA RTA Policy is set forth in a published guidance document.

30. The FDA RTA Policy guidance documents are updated from time-to-time.

31. The FDA RTA Policy guidance in place from February of 2019 through August of 2019 does not differ substantially from that which took effect in September of 2019.  A true and correct copy of the FDA RTA guidance in effect as of February 21, 2019 is attached hereto as Exhibit A; a copy of the FDA RTA guidance in effect as of September 13, 2019is attached hereto as Exhibit B.

32. The RTA Policy requires review of all 510(k) submissions against specific acceptance criteria.

33. The RTA Policy requires FDA to determine whether the 510(k) application is complete and whether the subject medical device is subject to 510(k) clearance.

34. The RTA Policy provides that: "FDA staff should determine whether the 510(k) submission is for a device type for which 510(k) is known to be an inappropriate regulatory approach, such as when the device is a Class III type and a PMA is required, or the device is

Class I or II and 510(k)-exempt. If a 510(k) is not appropriate, FDA staff should make this determination during the acceptance review and notify the submitter of the determination."

35. It is FDA policy that if a device manufacturer seeks 510(k) clearance for a device that does not require 510(k) clearance, the FDA will reject the submission.

## THE KURIN LOCK™ 510(k) REGULATORY STATUS AND CLEARANCE

36. Kurin initially submitted for 510(k) clearance for the Kurin Lock™ device on May 31, 2016.

37. Kurin did not market or offer to sell the Kurin Lock™ prior to receiving 510(k) clearance.

38. Kurin received 510(k) clearance for Kurin Lock™ on December 23, 2016, identified as 510(k) #K162233. A true and correct copy of the clearance letter is attached hereto as Exhibit C.

39. Kurin's clearance letter identified the Kurin Lock™ device as a Class II device under the FDC Act and associated regulations and guidance.

40. After receipt of its clearance letter, Kurin began to market and sell the Kurin Lock™ device.

## STERIPATH'S REGULATORY STATUS AND CLEARANCE

41. Prior to August of 2019, Magnolia represented that Steripath is a Class I device that is registered and listed with FDA. (Amended Answer at ¶22)

42. Prior to February 18, 2020, Magnolia represented to one or more customers and/or potential customers that Steripath was registered and listed with the FDA.

43. Prior to February 18, 2020, Magnolia represented to one or more customers and/or potential customers that Steripath was a Class I device.

44. Prior to February 18, 2020, Magnolia represented to one or more customers and/or potential customers that Steripath did not require 510(k) clearance.

45. Magnolia's registration and listing identifies the Steripath as a Class 1 device.

5

Complaint

1637106.2

46. The efficacy of the Steripath device was evaluated in a study conducted at the University of Nebraska Medical Center by Dr. Mark Rupp, as described in an article entitled *Reduction in Blood Culture Contamination Through Use of Initial Specimen Device* published in the July 2017 issue of *Clinical Infectious Diseases* (the "Rupp Study"). A true and correct copy of the Rupp Study is attached hereto as Exhibit D.

47. Magnolia references the Rupp Study in its marketing of Steripath.

48. The Rupp Study remains available on Magnolia's website as of the date of filing. (https://magnolia-medical.com/wp-content/uploads/2018/09/UNMC-Rupp_Steripath-Clinical-Trial-Results_Electronic_MM00052-CID-2017.pdf).

49. The Rupp Study refers to the Steripath as registered and listed with FDA and refers readers to Magnolia's registration and listing available on the FDA website (https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfRL/rl.cfm?lid=347659&lpcd=KST), a true and correct copy of which is attached hereto as Exhibit E.

50. At a May 2017 virtual press conference conducted the day before the Rupp Study was published, Dr. Rupp answered questions about the Rupp Study and the Steripath device.

51. A recording of the May 2017 virtual press conference remains available on the internet at https://vimeo.com/217730321.

52. Robert Gerberich, Magnolia's Chief Commercial Officer, attended the May 2017 virtual press conference and was able to communicate with the moderator and Dr. Rupp.

53. Upon information and belief, Greg Bullington, Magnolia's Chief Executive Officer also attended the May 2017 virtual press conference and was able to communicate with the moderator and Dr. Rupp.

54. During the virtual press conference, the moderator asked Dr. Rupp the following question about Steripath: "What's the regulatory classification, is it fully compatible with standard equipment and are any adaptors necessary?"

55. Dr. Rupp responded: " … my knowledge of this is that it is cleared by the FDA as an approved device, people can go and buy this today and use it in their hospitals and in their patients…."

56. At the time of the May 2017 virtual press conference, Magnolia had not submitted Steripath for 510(k) clearance by the FDA.

57. At the time of the May 2017 virtual press conference, Steripath had not received 510(k) clearance from the FDA.

58. At the time of the May 2017 virtual press conference, Magnolia took the position that Steripath was a Class I device that did not require 510(k) clearance.

59. No one corrected Dr. Rupp's statement at the May 2017 virtual press conference that Steripath was cleared by FDA.

60. Magnolia filed a submission for 510(k) clearance for Steripath on or about August 19, 2019.

61. Upon information and belief, in its submission for 510(k) clearance, Steripath identified the Steripath Gen2 Blood Collection System as a Class II device.

62. On February 28, 2020, the FDA issued 510(k) clearance for the Steripath Gen2 Blood Collection System , with identification number K192247. A true and correct copy of the FDA summary of Magnolia's 510(k) clearance for the Steripath Gen2 Blood Collection System is attached hereto as Exhibit F.

63. Magnolia received notice of the 510(k) clearance from FDA by letter dated February 28, 2020.

64. The Steripath clearance letter included a description of the cleared indications for use and a 510(k) summary ("Steripath Clearance Letter"). A true and correct copy of the Steripath Clearance Letter is attached hereto as Exhibit G.

65. The Steripath Clearance Letter identifies the Steripath Gen2 Blood Collection System as a Class II medical device.

66. In the Steripath Clearance Letter, the FDA wrote:

7

Complaint

1637106.2

> We have reviewed your Section 510(k) premarket notification of intent to market the device referenced above and have determined the device is substantially equivalent (for the indications for use stated in the enclosure) to legally marketed predicate devices marketed in interstate commerce prior to May 28, 1976, the enactment date of the Medical Device Amendments, or to devices that have been reclassified in accordance with the provisions of the Federal Food, Drug, and Cosmetic Act (Act) that do not require approval of a premarket application (PMA). You may, therefore market the device subject to the general controls provisions of the Act.

67. The indications for use cleared by FDA as described in the enclosure with the Steripath Clearance Letter reads:

> The Steripath® Gen2 Blood Collection System is a system to draw blood for in vitro diagnostic testing.
>
> The Steripath® Gen2 Blood Collection System is indicated for use as a blood collection system that diverts and sequesters the initial specimen prior to collection of a subsequent test sample to reduce the frequency of blood culture contamination when contaminants are present in the initial blood sample compared to blood cultures drawn with standard procedure.
>
> Additionally, components of the system may be used for infusion following sample collection after disconnecting of the Initial Specimen Diversion Device® (ISDD®). Venipuncture needles are indicated for short term infusion (less than 2 hours).

68. Prior to February 28, 2020, Magnolia's indications for use for Steripath – both the original and Gen2 – provided: "The Steripath Blood Collection Kit is indicated for reducing the frequency of blood culture contamination using a blood collection diversion method."  A true and correct copy of exemplar packaging inserts are attached hereto as Exhibit H.

69. Upon information and belief, Magnolia has not materially changed Steripath's indications for use at any time since June of 2015.

70. In marketing Steripath before February 28, 2020, Magnolia represented that Steripath "virtually eliminates" blood culture contamination.[1]

---

[1] Magnolia has made the representation that Steripath "virtually eliminates" blood culture contamination in various forms, including but not limited to the following: (a) "Steripath virtually eliminates blood culture contamination to achieve more accurate results, influencing the reduction of unnecessary and inappropriate antibiotics";(b) "By virtually eliminating blood culture contamination and false-positive results, patients can avoid antibiotic treatment, be treated with appropriate antibiotics or de-escalated without delay." Steripath will "… significantly improve specimen integrity and the accuracy, consistency, and predictability of critical laboratory tests"; (c) "Steripath … is the only clinically proven technology to virtually

8

Complaint

1637106.2

71. By issuing 510(k) clearance for Steripath, the FDA determined that Steripath is not a Class I device.

72. By issuing 510(k) clearance for Steripath, the FDA determined that premarket clearance was necessary before such device could be legally marketed for its indicated use.

73. By issuing 510(k) clearance for Steripath, the FDA determined that marketing of the device prior to February 28, 2020, was not legal.

74. By issuing 510(k) clearance for Steripath, the FDA determined that as of the May 2017 virtual press conference, Steripath had not been cleared as an approved device.

75. By issuing 510(k) clearance for Steripath, the FDA determined that the identification of Steripath as a Class I device in its registration and listing was not correct.

76. After receiving 510(k) clearance, Magnolia began marketing the "Steripath Gen2 Product Family" as cleared by FDA.

77. Specifically, in a press release dated March 5, 2020, Magnolia wrote: "Magnolia Medical today announced U.S. Food and Drug Administration (FDA) 510(k) clearance of new configurations and the entire Steripath® Gen2 Initial Specimen Diversion Device® product family." A true and correct copy of the March 5, 2020, press release is attached hereto as Exhibit I.

78. The March 5, 2020 press release also states that: "Steripath is the first and only cleared device indicated to reduce blood culture contamination."

79. On its website, Magnolia also began to promote its 510(k) clearance, stating that Steripath is "The only FDA-cleared device indicated to reduce blood culture contamination."

---

eliminate the preventable error of blood culture contamination and false positive results for sepsis…." Kurin does not concede that these representations are accurate. But Kurin also does not assert in this action that these statements are false or misleading. These representations are the subject of other proceedings between the parties.

9

Complaint

1637106.2

80. By accepting Magnolia's submission for 510(k) clearance and conducting a full review leading to a decision, the FDA determined that no exemption applied to the Steripath Gen 2 Blood Collection System.

81. Prior to receiving clearance, Steripath was not cleared to be commercially distributed under the FDC Act and its associated regulations.

## **MAGNOLIA ENGAGED IN COMMERCIAL DISTRIBUTION OF STERIPATH PRIOR TO RECEIVING 510(k) CLEARANCE**

82. The Steripath Gen2 device is incorporated in a variety of blood collection sets including those utilizing butterfly needles of various gauges and luer set ups.

83. Magnolia refers to the various blood collection sets incorporating the Gen2 device as the "Gen2 Family" of devices.

84. Magnolia assigns catalog numbers to the various configurations in which the Gen2 device is sold.

85. By way of example and not limitation, catalog numbers include the following:

　　a.　2700-21-EN for Steripath GEN2/ Blood Culture collection system with 21G push-button safety need and transfer adaptor;

　　b.　27BD-21-EN for Steripath GEN/2 Blood Culture Collection System with 21G push-button safety needle and BD transfer adaptor;

　　c.　2700-23-EN for Steripath GEN/2 Blood Culture Collection System with 23G push-button safety needle and transfer adaptor;

　　d.　27BD-23-EN for Steripath GEN/2 Blood Culture Collection System with 23G push-button safety needle and BD transfer adaptor;

　　e.　2700-EN for Steripath GEN/2 Blood Culture Collection System with Luer IV extension set and transfer adaptor;

　　f.　27BD-EN for Steripath GEN/2 Blood Culture Collection Set with Luer IV extension set and BD transfer adaptor.

86. Magnolia markets and sells its Steripath directly to hospitals, other medical distribution channels, and medical professionals such as purchasing managers for hospitals.

10

Complaint

1637106.2

87. These customers utilize the above-reference catalog numbers to identify the configuration of Steripath they desire to purchase.

88. Effective February 1, 2018, Magnolia entered into contracts with the United States Department of Veteran Affairs ("VA") by which VA hospitals could purchase the above-identified catalog numbers at specific prices.

89. Summaries of the VA contracts obtained from the VA vendor portal for each of the above-identified catalog numbers are attached hereto as Exhibit J.

90. Upon information and belief numerous VA hospitals purchased Steripath devices including Steripath Gen2 devices from Magnolia after February 1, 2018 pursuant to the contract or contracts that became effective as of that date.

91. Upon information and belief, VA policy does not permit it to enter into contracts for purchase of medical devices unless they are legally marketed.

92. Upon information and belief, in order to obtain VA contracts, Magnolia represented to the VA that the Steripath was legally marketed.

93. The Steripath Clearance Letter, and specifically, the 510(k) Summary included therewith, identifies specific configurations of the Gen2 family of devices that are subject to clearance by Steripath Kit Model Number.

94. The specific configurations subject to clearance include numerous configurations with Model Numbers that are the same as the catalog numbers referenced in the contracts entered into by Magnolia with the VA.

95. When Magnolia began commercial distribution of Steripath – including specifically the Steripath Gen 2 Blood Collection System – Magnolia represented to customers and prospective customers that Steripath was legally marketed

96. Prior to February 28, 2020, Magnolia represented to all customers that Steripath was either not subject to 510(k) clearance as a predicate to commercial distribution or implied that it was cleared by the FDA.

97. Any implicit or explicit representation by Magnolia that Steripath was legally marketed prior to February 28, 2020, was false.

98. Customers and prospective customers purchased Steripath and entered into contracts for purchase of Steripath – and specifically the Steripath Gen 2 Blood Collection System – before February 28, 2020.

99. These consumers and customers were all deceived and/or misled as to the regulatory status of the Steripath – and specifically the Steripath Gen2 Blood Collection System.

### FIRST CLAIM FOR RELIEF
### (False Advertising in Violation of 15 U.S.C. § 1125(a))

100. Kurin realleges and incorporates the previous paragraphs of this Complaint as though set forth in full herein.

101. The Steripath Gen2 Blood Collection System first received FDA 510(k) clearance on or about February 28, 2020.

102. Magnolia offered the Steripath Gen2 Blood Collection System for commercial distribution prior to February 28, 2020.

103. Prior to February 28, 2020, Magnolia falsely and misleadingly represented that the Steripath Gen2 Blood Collection System was legally marketed.

104. In accordance with its RTA Policy, by accepting Magnolia's submission for 510(k) clearance, FDA determined that 510(k) clearance was necessary to market the Steripath Gen2 Blood Collection System.

105. By making a submission for 510(k) clearance to the FDA, Magnolia admitted that the Steripath Gen2 Blood Collection System was appropriately classified as a Class II device subject to 510(k) clearance.

106. By issuing 510(k) clearance for the Steripath Gen2 Blood Collection System, the FDA determined that Magnolia's representations that its product was legally marketed prior to February 28, 2020, were false.

107. By issuing 510(k) clearance for the Steripath Gen2 Blood Collection System, the FDA determined that Magnolia's representations that its product was a Class I device were false.

108. Magnolia's statements have actually misled or have a tendency to mislead a substantial segment of Magnolia's audience including all customers that purchased or entered into contracts to purchase Steripath – and specifically the Steripath Gen2 Blood Collection System – before February 28, 2020.

109. Magnolias false and misleading statements, explicit and implicit, have resulted in the sale of its Steripath in direct competition with Kurin's competing product, Kurin Lock™™.

110. Magnolia's false statements are material and likely to influence the purchasing decisions of customers including various hospitals, healthcare professionals, nursing homes, and other customers.

111. The falsely advertised Steripath devices are sold in interstate commerce and Kurin and Magnolia are direct competitors for sales of such products.

112. Kurin has been or is likely to be injured and suffer damages as a result of Magnolia's false statements, either by direct diversion of sales from itself to Magnolia or by a lessening of its goodwill.

113. Magnolia has and continues to obtain unjust profits as a result of its false and misleading statements.

## SECOND CLAIM FOR RELIEF
**(False Advertising Pursuant to Cal. Bus. & Prof. Code § 17500 et seq.)**

114. Kurin realleges and incorporates the previous paragraphs of this Complaint as though set forth in full herein.

115. Magnolia advertised and offered for sale its products in the state of California before February 28, 2020. In so doing, it made the explicit and implicit representation that its products were either cleared for marketing and sale by FDA or that such clearance was not necessary. As set forth above, these representations are false and misleading as the FDA has now determined that clearance was, in fact, necessary and not obtained until February 28, 2020.

13

Complaint

1637106.2

116. Magnolia knew that implicit and explicit representations that Steripath was legally marketed prior to February 28, 2020, were untrue or misleading or, by the exercise of reasonable care, should have known that the statements were untrue or misleading.

117. The false and misleading representations made by Magnolia in connection with the marketing of its products have had the tendency to mislead any reasonable consumer into falsely believing that Magnolia's Steripath had the same clearance to market as Kurin's Kurin Lock™ when it did not have such clearance.

118. Magnolia's conduct constitutes false advertising under Cal. Bus. & Prof. Code § 17500 *et seq*. Such false advertising has been done willfully with the intent to harm Kurin.

119. Magnolia has benefitted from the sale of its products to consumers who relied upon the untrue and misleading representations set forth herein.

120. Magnolia's false advertising has and is causing damage and irreparable harm to Kurin in the form of lost profits, loss of market share, and loss of sales.

### THIRD CLAIM FOR RELIEF
**(Unfair Competition to Cal. Bus. & Prof. Code § 17200 *et seq*.)**

121. Kurin realleges and incorporates the previous paragraphs of this Complaint as though set forth in full herein.

122. Magnolia's false advertising constitutes unfair competition under Cal. Bus. & Prof. Code § 17200 *et seq*.

123. Magnolia's implicit and explicit representations prior to February 28, 2020, that Steripath was legally marketed, when it did not have the clearance required by FDA, was competitively unfair to competitors, such as Kurin, who obtained necessary premarket approval.

124. Magnolia obtained an unfair business advantage by marketing its product for six years without necessary approval creating an unfair advantage.

125. Such false advertising has been done willfully with the intent to harm Kurin.

126. Magnolia's unfair competition has and is causing damage and irreparable harm to Kurin in the form of lost profits, loss of market share, and loss of sales.

Complaint

1637106.2

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Kurin, Inc., prays this Court enter judgment in its favor on all counts granting relief as follows:

A. Entering injunctive relief requiring Magnolia to (i) immediately recall and cease all sales which are or could be derived from its false and misleading representations; (ii) publish appropriate corrective advertising clarifying that all sales or contracts entered into prior to February 28, 2020, were the product of both explicit and implicit misrepresentations; and (iii) withdraw from any contract awarded based on these false and misleading statements;

B. Awarding Kurin damages in an amount to be determined including, but not limited to a disgorgement of all profits obtained from sales prior to February 28, 2020;

C. Restitution;

D. Awarding Kurin its costs of suit and reasonable attorneys' fees incurred in this action;

E. Awarding Kurin enhanced damages for Magnolia's willful false advertising; and,

F. Entering any other relief the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff Kurin, Inc., hereby demands a jury trial as to all issues that are so triable

DATED:  June 1, 2020

BY: /s/ *Nathan D. Thomas*
Jonathan Hangartner
X-PATENTS, APC

Nathan D. Thomas
JONES, WALDO, HOLBROOK & MCDONOUGH, P.C.